IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| THOMAS GERALD HOLLIS, individually; and THOMAS GERALD HOLLIS, as Personal Representative of the Estate of Elizabeth Ann Hollis, | * * * * |
| Plaintiffs, | * |
| vs. | * |
| CALLAWAY GARDENS RESORT, INC., | CASE NO. 4:05-CV-147(CDL) * * |
| Defendant. | * |

O R D E R

Presently pending before the Court are Defendant's Motion for Summary Judgment, Defendant's Motion in Limine Regarding Use of Photographs and Defendant's Notice of Objection to Evidence. For the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. 20) is granted. In reaching this conclusion, the Court did not rely upon inadmissible evidence, so Defendant's Motion in Limine (Doc. 34) is denied as moot, and Defendant's Notice of Objection to Evidence (Doc. 52) is overruled as moot.

FACTUAL BACKGROUND

This case arises from the alleged negligence of Defendant Callaway Gardens Resort, Inc. in installing and maintaining its portable dance floor. Viewing the evidence in the light most favorable to Plaintiffs reveals the following:

1

Plaintiff Thomas Hollis ("Mr. Hollis") and his wife Elizabeth ("Mrs. Hollis")[1] attended a New Year's Eve party at Callaway Gardens on December 31, 2003. Mr. and Mrs. Hollis began dancing at about 9:00 p.m. They danced all around the dance floor to most of the songs played. Shortly after midnight, as Mr. and Mrs. Hollis were dancing the jitterbug, Mrs. Hollis "stopped dead still and collapsed," breaking her left ankle. (Thomas Hollis Dep. 36:4-7, June 19, 2007 [hereinafter T. Hollis Dep.].) Plaintiffs contend that Mrs. Hollis fell and broke her ankle because the heel of her shoe got stuck in a gap in the dance floor. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J. 10 [hereinafter Pls.' Resp.]; *see also* T. Hollis Dep. 37:12-15 ("I think her ankle was locked [into the floor] while she was turning."); *Id.* at 39:11-14 ("After we went back, when the floor was reassembled, then it was to me obvious that it could have easily happened that way. That the foot locked into a crevice or an uneven area of the floor.").)

The dance floor used on the night of Mrs. Hollis's fall was actually two portable dance floors locked together. (Hudson Dep. 17:2-23, Oct. 11, 2007.) Each of these portable dance floors consists of interlocking panels that are assembled and tightened together. (*Id.* at 19:25-20:2.) Once an event is over and the

---

[1] After filing this lawsuit, Mrs. Hollis developed cancer, and she died in April of 2007. Plaintiffs do not allege that Mrs. Hollis's illness and death were the result of her fall at Callaway Gardens. Mr. Hollis, as representative of the estate of Mrs. Hollis, has been substituted as Plaintiff for Mrs. Hollis.

portable dance floors are no longer needed, the floors are disassembled, and the pieces are stored in carts. (*Id.* at 79:13-14.)

No one examined the dance floor immediately after Mrs. Hollis fell, and there is no evidence that anyone saw gaps in the dance floor on the night of the fall. However, Plaintiffs asked Defendant to reassemble the dance floor on January 5, 2005. Callaway Gardens Set Up Manager Henry Mack Hudson, who supervised the dance floor installation on December 31, 2003, oversaw the reassembly on January 5, 2005. (Hudson Aff. ¶¶ 4-6, Dec. 27, 2007; Hudson Dep. 80:4-6.) Hudson reassembled the floor in the "same format" as it was on December 31, 2003. (Hudson Dep. 80:7-12.) When Plaintiffs inspected the reassembled dance floor, they found gaps in the metal crevices joining the panels. (T. Hollis Dep. 39:11-14.)

DISCUSSION

## I.  **Summary Judgment Standard**

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A central purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Here, Defendant has the burden to show that there is no genuine issue of material fact. *See id.* at 323. To meet this burden,

3

Defendant may point the court to "affirmative evidence demonstrating that [Plaintiffs] will be unable to prove [their] case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citation and footnote omitted). In the alternative, Defendant may show "that there is an absence of evidence to support [Plaintiffs'] case." *Celotex Corp.*, 477 U.S. at 325. This is because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Defendant is not required to come forth with evidence negating Plaintiffs' claim. *See id.*

Once Defendant meets its burden, the burden shifts and Plaintiffs must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324. Plaintiffs must "go beyond the pleadings," *id.,* and point the Court to "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord Celotex*, 477 U.S. at 324. Plaintiffs are not required to produce evidence in a form that would be admissible at trial, but they must point to some evidence to show a genuine issue of material fact. *Celotex*, 477 U.S. at 324. Such evidence may be in the form of affidavits, depositions, answers to interrogatories, or admissions on file. *Id.; accord* Fed. R. Civ. P. 56(e).

Defendant is entitled to summary judgment if, after construing the evidence in the light most favorable to Plaintiffs and drawing all justifiable inferences in their favor, no genuine issues of

4

material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Anderson*, 477 U.S. at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for Plaintiffs—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

Defendant here contends that there is an absence of evidence to support Plaintiffs' case. Specifically, Defendant argues that Plaintiffs have pointed to no evidence on the essential element of causation.

## II. Plaintiffs' Premises Liability Claims

Under Georgia law, landowners have a duty to exercise reasonable care to keep their premises safe for their invitees. O.C.G.A. § 51-3-1. However, "'[p]roof of a fall, without more, does not create liability on the part of a proprietor or landowner. It is common knowledge that people fall on the best of sidewalks and floors.'" *Pinckney v. Covington Athletic Club & Fitness Ctr.*, 655 S.E.2d 650, 652-53 (Ga. Ct. App. 2007) (quoting *Flagstar Enters. v. Burch*, 267 Ga. App. 856, 856-857, 600 S.E.2d 834 (2004)). To establish

liability, "'[t]here must be proof of fault on the part of the owner and ignorance of the danger on the part of the invitee.'" *Belk Dep't Store of Charleston, S.C., Inc. v. Cato*, 267 Ga. App. 793, 794, 600 S.E.2d 786, 787 (2004) (quoting *Souder v. Atlanta Family Rests.*, 210 Ga. App. 291, 292, 435 S.E.2d 764 (1993)); *accord Robinson v. Kroger Co.*, 268 Ga. 735, 749, 493 S.E.2d 403, 414 (1997). Therefore, an invitee seeking to recover for a fall must point to the existence of a hazardous condition on the premises. *Pinckney*, 655 S.E.2d at 652. Without evidence of the existence of a hazard that caused the fall, "there can be no evidence that the defendant had any knowledge of the alleged danger, and therefore no recovery for the plaintiff." *Cato*, 267 Ga. App. at 794, 600 S.E.2d at 787 (citation omitted).

Causation is an "essential element in slip or trip and fall cases."[2] *Pennington v. WJL, Inc.*, 263 Ga. App. 758, 760, 589 S.E.2d 259, 261 (2003) (footnote omitted). "Where the plaintiff does not know of a cause or cannot prove the cause, there can be no recovery because an essential element of negligence cannot be proven." *Id.*, 589 S.E.2d at 261-62 (footnote omitted). "A mere possibility of causation is not enough" to prevail; the plaintiff must point to

---

[2] Plaintiffs take issue with the characterization of this case as a "slip and fall" case—Plaintiffs contend that it is a "stop and fall" case. (Pls.' Resp. at 3.) This distinction has no impact on what law applies; this case is properly considered under Georgia's "slip or trip and fall" case law because the key inquiry is whether Mrs. Hollis fell due to a hazardous condition on the Callaway Gardens dance floor.

6

something other than speculation and conjecture. *Id.*, 589 S.E.2d at 262 (footnote omitted).

Georgia courts routinely find that summary adjudication in favor of the landowner is appropriate where the plaintiff can only speculate as to what caused a fall. In *Pinckney*, for example, the plaintiff was injured when she slipped on a wet pool deck after climbing out of a pool. *Pinckney*, 655 S.E.2d at 652. The plaintiff "had no idea" what made her fall but "assumed" she slipped on algae because she photographed algae on the pool deck when she went back to inspect the pool twelve days after her fall. *Id.* at 651-52. The court found that the photograph of algae taken after the plaintiff's fall did not create a genuine issue about the existence of algae *at the time of the fall*, particularly because the pool had been closed and drained for replastering during the intervening twelve days. *Id.* at 652. The court concluded that summary judgment was warranted because "speculation and conjecture" were the only support for the conclusion that algae caused the plaintiff to fall. *Id.* at 653. Similarly, in *Pennington*, the court found nothing but speculation and conjecture with respect to causation because the plaintiff did not know why he fell. *Pennington*, 263 Ga. App. at 760, 589 S.E.2d at 262. Rather, after reviewing photographs of the scene taken several days after the fall, the plaintiff speculated that he must have tripped on some hoses that were on the ground. *Id.; see also Cato*, 267 Ga. App. at 794, 600 S.E.2d at 787 (plaintiff's assumption that

7

a foreign substance caused his fall was insufficient to prove that there was a foreign substance on the floor); *Shadburn v. Whitlow*, 243 Ga. App. 555, 556, 533 S.E.2d 765, 767 (2000) (speculation that fall was caused by loose carpeting did not establish causation).

Like the plaintiffs in *Pinckney* and *Pennington*, Plaintiffs here are unable to point the Court to sufficient proof of causation: they have not presented evidence that Mrs. Hollis fell because of a gap in the dance floor. Plaintiffs' evidence consists of medical summaries by Mrs. Hollis's surgeon,[3] an inspection of the reassembled dance floor conducted one year after the accident,[4] and the testimony of Mr. Hollis regarding his wife's fall. Plaintiffs also place heavy emphasis on evidence that Defendant had no safety policy regarding installation of the dance floors. (Pls.' Resp. at 9, 16.) As discussed below, none of this evidence is sufficient to create a genuine issue on causation.

---

[3] Defendant objects to the medical records as inadmissible hearsay. (Def.'s Notice of Objection to Evidence 5 [hereinafter Def.'s Notice].) Assuming for purposes of this summary judgment motion that the records are admissible, they still are not enough to create a genuine issue of material fact on causation. *See infra*.

[4] Defendant objects to the Affidavit of Kerry Edwards, arguing that Edwards was not properly disclosed as an expert and that Edwards is not qualified to render an expert opinion on causation. (Def.'s Notice at 1-4.) Even if Edwards had been properly identified as an expert and was qualified to render an expert opinion on causation, his Affidavit is not enough to prove causation because his opinion is based on a review of the reassembled dance floor. *See infra*. Defendant also objects to photographs of the reassembled floor. (Def.'s Mot. in Limine.) Even if the Court were to consider these photographs, the condition of the reassembled dance floor on January 5, 2005 does not create a genuine issue regarding the condition of the floor on January 1, 2004. *See infra*.

First, Plaintiffs contend that the medical records establish that Mrs. Hollis fell because her shoe got caught in a gap in the floor. Plaintiffs argue that the medical evidence shows "a traumatic injury to the ankle, not caused by lateral movement." (Pls.' Resp. at 10 (emphasis omitted).) However, a review of the medical records reveals no conclusion as to the cause of the injury. The "Summary of Procedure" by Mrs. Hollis's surgeon shows a diagnosis of "left ankle trimalleolar fracture." (Pls.' Ex. B to Feb. 4, 2008 Hr'g 1 [hereinafter Pls.' Hr'g Ex. B].) The "Discharge Summary" states that Mrs. Hollis "had injury to her ankle while dancing on New Year's Eve while in Callaway Gardens, and was seen in a local emergency room where x-ray revealed a trimalleolar fracture which was splinted and they came to Birmingham for further care." (*Id.* at 2.) Plaintiffs have pointed to no evidence in the record on whether the mechanics of Mrs. Hollis's fall can be determined from the type of injury she sustained. Accordingly, the Court concludes that the medical records do not create a genuine issue on causation.

Second, Plaintiffs rely upon their January 5, 2005 inspection of the reassembled dance floor, arguing that the existence of gaps in the reassembled floor establishes that gaps existed when Mrs. Hollis fell on January 1, 2004. (Pls.' Resp. at 17.) However, the undisputed evidence shows that the dance floor consisted of interlocking panels that were not necessarily assembled exactly the same way every time the floor was used. The evidence also shows that

the dance floor was disassembled and stored after the New Year's Eve party and that it had to be reassembled for Plaintiffs' inspection one year later. Based on these facts, the Court concludes that the inspection of the reassembled dance floor is not enough to create a genuine issue about the existence of gaps in the dance floor *at the time of the fall*. *See Pinckney*, 655 S.E.2d at 652 (finding that a photograph of algae taken twelve days after the plaintiff's fall did not create a genuine issue about the existence of algae at the time of the fall). Moreover, even if gaps existed in the floor at the time of Mrs. Hollis's fall, it is sheer speculation to conclude that those gaps contributed to her fall.

Third, Plaintiffs offer the testimony of Mr. Hollis, who was dancing with Mrs. Hollis when she fell. According to Mr. Hollis, Mrs. Hollis gave him an alarmed look, then "stopped dead still and collapsed." (T. Hollis Dep. 35:5-7, 36:4-7.) However, Mr. Hollis "didn't know at the time" what caused Mrs. Hollis to stop suddenly before she fell. (*Id.* at 37:9.) He did not look at the floor on the night of Mrs. Hollis's fall. (*Id.* at 39:23, 40:2.) Mr. Hollis later concluded that the floor was uneven and caused the fall because: (1) based on his understanding of the orthopedic surgeon's diagnosis, that was "the only reasoning" he could come up with; and (2) when Mr. Hollis saw the reassembled floor, "it was . . . obvious that it could have happened that [Mrs. Hollis's] foot locked into a crevice or an uneven area of the floor." (*Id.* at 37:12-22, 38:19-20; 39:11-14.)

10

Because this testimony regarding the cause of Mrs. Hollis's fall is simply speculation, it is not sufficient to create a genuine issue on causation. *See Pinckney*, 655 S.E.2d at 653; *Pennington*, 263 Ga. App. at 760, 589 S.E.2d at 262.

Finally, Plaintiffs contend that the testimony of Callaway Gardens Set Up Manager Henry Mack Hudson is the "most compelling" evidence on causation. (Pls.' Resp. at 10.) Hudson testified that Defendant did not have an official safety policy in place regarding installation of the portable dance floors. (Hudson Dep. 35:25.)[5] At most, this evidence goes to the issue of whether Defendant breached the standard of care on the installation of dance floors. But it does not go to causation: it does not show that Defendant's dance floor contained gaps on January 1, 2004 or that Mrs. Hollis fell because of a gap in the floor.

Based on all of the evidence presented by Plaintiffs, the Court concludes that Plaintiffs have not presented evidence sufficient to show that Mrs. Hollis fell because of a gap or other hazard in the dance floor. Since causation is an essential element of Plaintiffs' claim, the Defendant is entitled to summary judgment because Plaintiffs have not met their burden of pointing the Court to

---

[5]While there was no official safety policy regarding the floors, Hudson did testify that he had been putting down portable dance floors at Callaway Gardens for 40 years and that when he put the panels together he would "tighten down with allen wrenches, tight as the grip will go." (Hudson Dep. 35:1-2). Once he finished tightening the panels, Hudson would walk the floors and look over them to make sure they were down correctly: "when it was done, I knew it was done." (Hudson Dep. 34:3-19.)

11

specific facts showing a genuine issue on causation.  *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 20) is granted, Defendant's Motion in Limine (Doc. 34) is denied as moot, and Defendant's Objection to Evidence (Doc. 52) is overruled as moot.

IT IS SO ORDERED, this 21st day of February, 2008.

                                            S/Clay D. Land
                                                  CLAY D. LAND
                               UNITED STATES DISTRICT JUDGE